JRS/DR/SMS
F. #2021R00129

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

OLUWAGBENGA AGORO, et al.,

   Defendants.

- - - - - - - - - - - - - - - - - - -X

Docket No. 20-CR-293 (S-1) (WFK)

## GOVERNMENT'S SUPPLEMENTAL MOTION *IN LIMINE* AND MEMORANDUM IN SUPPORT

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Jonathan Siegel
Dana Rehnquist
Sophia Suarez
Assistant U.S. Attorneys
   (Of Counsel)

## **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 4

    I.        Applicable Law ................................................................................................... 4

        A.        Prior Identification:  Rule 801(d)(1)(C) ............................................................. 4

        B.        Lay Opinion:  Rule 701(a) .................................................................................. 6

    II.       Discussion ........................................................................................................... 7

CONCLUSION ................................................................................................................................ 9

## Table of Authorities

Cases

Neil v. Biggers, 409 U.S. 188 (1972) ............................................................................................ 6

United States v. Arroyo, 600 F. App'x 11 (2d Cir. 2015) .............................................................. 7

United States v. Diaz, 986 F.3d 202 (2d Cir. 2021) ................................................................... 6, 8

United States v. Jones, 652 F. Supp. 1561 (S.D.N.Y. 1986) ...................................................... 5, 6

United States v. Rea, 958 F.2d 1206 (2d Cir. 1992) ...................................................................... 7

United States v. Simmons, 923 F.2d 934 (2d Cir. 1991) ................................................................ 4

United States v. Stephenson, No. 20-CR-511 (AMD),
   2021 WL 4972601 (E.D.N.Y. Oct. 26, 2011) ......................................................................... 5, 6

United States v. Stewart, 770 F. Supp. 872 (S.D.N.Y. 1991) ........................................................ 5

United States v. Thai, 29 F.3d 785 (2d Cir. 1994) ......................................................................... 8

United States v. Wolfish, 525 F.2d 457 (2d Cir. 1975) .................................................................. 8

United States v. Woodford, No. 18-CR-654 (KAM),
   2019 WL 5457854 (E.D.N.Y. Oct. 23, 2019) ..................................................................... 6, 7, 8

Rules

Federal Rule of Evidence 701 .................................................................................................... 4, 6

Federal Rule of Evidence 801(d)(1)(C) ...................................................................................... 4, 8

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its supplemental motion in limine regarding the proposed admission of certain testimony by a law enforcement witness. The government learned about this testimony on Friday, September 16, 2022, during its first pre-trial meeting with the witness, New York City Police Department ("NYPD") Officer Joseph Calabrese. For the reasons set forth below, the Court should grant the motion and allow the witness to testify as to the matters described herein.

BACKGROUND[1]

On November 7, 2020, defendants Bailey, Battice, Fremont, Thompson and Agoro participated in drive-by shootings in rival gang territory as retaliation for the stealing of a chain from Fremont (hereinafter, the "November 7 Shootings"). See ECF No. 318 at 12-14. As set forth below, all five defendants were captured on video surveillance footage after returning to Flatbush, known NLC territory, following the November 7 Shootings.

Video surveillance footage in the vicinity of 480 East 23 Street shows that the Jeep and Audi, used in the shootings, returned to this block later that afternoon. See Ex. A at 00:11-00:40; Ex. B at 00:01-00:24. Agoro can be seen exiting the Audi used in the shootings. See Ex. A at 00:11-00:40. Later, Bailey, Battice, Fremont and Thompson can be seen arriving in the Jeep, parking and exiting the vehicle. See Ex. B at 00:01-00:24; Ex. C at 21:20-23:45; Ex. D at 19:53-20:09, 23:38-24:36; Ex. E at 23:28-24:04; Ex. F at 00:28-1:40. Agoro, Battice, Thompson and Bailey can be seen on video wearing the same clothing they

---

[1] The government herein incorporates by reference the background of the case set forth in its September 9, 2022 motion in limine in the above-captioned matter. See ECF No. 318. As such, the facts set forth in this section are a summary of the facts already in the record and only as they relate to the instant motion.

wore earlier that day and prior to or during the course of the shootings.  As shown on the video, all five defendants appear to be in a celebratory mood.  All five are greeted by individuals on the block with hugs and handshakes and Agoro, talking on his cellphone, throws a GD gang sign.  See Ex. F at 00:00-0:12; 00:28-1:40.

On September 16, 2022, the government met with NYPD Officer Calabrese, who collected the video described above and attached hereto as Exhibits A, B and F, among other video.  While discussing the collection, Officer Calabrese stated, in sum and substance, that he remembered this particular video collection in part because he recognized some of the depicted individuals from his prior work as a Field Intelligence Officer ("FIO") in the 67th Precinct, which includes areas of Flatbush.  Officer Calabrese explained that from 2016 to 2017 he served as an FIO, and as such was responsible for gathering and disseminating intelligence to support criminal investigations, including those involving individuals known or believed to be affiliated with gangs that operate within the precinct.  In that capacity, he became familiar with Battice, Fremont, Bailey and others.  While reviewing the footage, specifically the video attached as Exhibit F, Officer Calabrese identified each of these three defendants (he did not recognize Thompson or Agoro, who were unfamiliar to him).  Still images taken from Exhibit F, which was collected and reviewed by Officer Calabrese, are provided immediately below.

Battice

Fremont




Bailey



3

ARGUMENT

The government moves to admit Officer Calabrese's testimony identifying defendants Battice, Bailey and Fremont in video surveillance footage he collected from the vicinity of 480 East 23 Street in Flatbush on the day of the November 7 Shootings. First, such testimony is properly admissible under Federal Rule of Evidence 801(d)(1)(C). Because the identification was not suggestive—much less unduly suggestive—and, in any event, the identification is otherwise independently reliable, it comports with the Due Process Clause of the Fourth Amendment and should not be excluded. Second, the testimony comports with the requirements of Federal Rule of Evidence 701(a) regarding lay opinion testimony. The government respectfully submits that its motion should therefore be granted.

I. Applicable Law

A. Prior Identification: Rule 801(d)(1)(C)

Rule 801(d)(1)(C) excludes from the definition of hearsay "statement[s] identif[ying] a person as someone the declarant perceived earlier." Fed. R. Evid. 801(d)(1)(C). A prior identification will be excluded only if the procedure that yielded the identification is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." United States v. Simmons, 923 F.2d 934, 950 (2d Cir. 1991).

The issue of suggestive identification procedures usually arises in cases where the identification is by an eyewitness to the crime. In that situation, the concern is that a witness with limited recollection of a brief and likely traumatic event may have been improperly guided by law enforcement to identify the defendant as the perpetrator. For example, if an eyewitness is shown a single photograph and asked if that is the perpetrator,

4

the witness may reasonably "assume that the single photograph displayed is that of the person who the police suspect committed the crime," which could bias the witness towards agreeing that the person in the photograph is indeed the guilty party. United States v. Jones, 652 F. Supp. 1561, 1570 (S.D.N.Y. 1986).

Courts less frequently address the situation in this case. Here, surveillance video reviewed by an NYPD officer who collected the video as part of an investigation. Courts faced with a similar (and arguably more suggestive) scenario have held that use of a single surveillance photograph in such situations is not suggestive. See United States v. Stephenson, No. 20-CR-511 (AMD), 2021 WL 4972601, at *4 (E.D.N.Y. Oct. 26, 2011) (finding that identification procedure was not suggestive where "law enforcement officers showed the defendant's parole officer a still photo from the surveillance video, and the parole officer identified the defendant"); United States v. Stewart, 770 F. Supp. 872, 876 (S.D.N.Y. 1991) ("surveillance photographs have been held not to implicate [an] issue of impermissible suggestiveness because such photographs contain the likeness not of some possible suspect in the police files, but of the man who actually committed the robbery" (citing cases)); Jones, 652 F. Supp. at 1570 ("[T]here is simply no meaningful resemblance, in due process terms, between showing a single photograph to a victim and asking: 'Is this the man?'; and showing a single photograph to a third party . . . and asking: 'Do you recognize this man?'").

As the court in Jones explained, when a non-eyewitness is asked if they recognize the person in the video, she is "free to answer 'yes' or 'no.'" 652 F. Supp. at 1570. Even when shown only one photograph, that one photograph "in no way 'suggests,' that is to say, tends to elicit, an affirmative response." Id. In other words, there "is a quantum

5

difference" between asking about "recognition" and asking about "identification," and where the questions focus on recognition, use of one photograph is "not suggestive at all." Id.

In eyewitness identification cases, courts have identified five non-exclusive factors, known as the Biggers factors, that may be relevant to independent reliability: "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." United States v. Diaz, 986 F.3d 202, 207 (2d Cir. 2021) (quoting Neil v. Biggers, 409 U.S. 188, 199 (1972)).

These factors do not apply well in the context of a recognition witness who was not an eyewitness to the crime itself. See Stephenson, 2021 WL 4972601, at *4 (The "Biggers framework is not clearly apposite . . . [because] Biggers typically concerns the reliability of an eye witness' identification; in this case, the defendant challenges a confirmatory identification by his parole officer."). In such cases, courts have modified the Biggers factors to focus on the witness's interactions with the defendant prior to the identification, with the "chief" factor being the witnesses' "opportunity to observe [the defendant] prior to the identification." See United States v. Woodford, No. 18-CR-654 (KAM), 2019 WL 5457854, at *11-12 (E.D.N.Y. Oct. 23, 2019).

B.   Lay Opinion:  Rule 701(a)

Rule 701 of the Federal Rules of Evidence allows lay opinion testimony "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." United States v.

6

Arroyo, 600 F. App'x 11, 15 (2d Cir. 2015) (quoting Fed. R. Evid. 701). Such testimony should not be admitted, however, "where the jury is 'in as good a position as the witness to draw the inference' . . . as the opinion is not helpful and should not be admitted." Id. (quoting United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992)). Where a law enforcement witness testifies to facts supporting his "personal knowledge and observations of the defendant," his testimony satisfies the requirements of Rule 701 because his "greater familiarity" with the defendant makes his identification of him in a video or photograph helpful to the jury. United States v. Woodford, No. 18-CR-654 (KAM), 2019 WL 5457854, at *14 (E.D.N.Y. Oct. 23, 2019).

II. Discussion

As an FIO in the Flatbush area from 2016 to 2017, it was Officer Calabrese's responsibility to gather intelligence about individuals in the community, particularly those with suspected gang affiliations. In that capacity, he learned of—and certain instances, even met with—defendants Battice, Bailey and Fremont. As a result, when Officer Calabrese collected video in connection with the November 7 Shootings he immediately recognized each of them in video taken from 480 East 23 Street on the day of the shootings. Officer Calabrese's identification was not the result of any procedures pointing him towards these defendants, and even if it were, it was independently reliable.

When Officer Calabrese collected this video on November 23, 2020, he was not provided with the names of the defendants or any details of the case, other than reports that two shootings took place at certain locations. His identification therefore could not have been suggested by another officer. Further, even if any subsequent identification by another officer could have strengthened Officer Calabrese's confidence (of which the government is

7

not aware), that is not a good basis for suppression where "the original identification was strong and unequivocal." United States v. Thai, 29 F.3d 785, 810 (2d Cir. 1994) ("[I]f the original identification was strong and unequivocal, such misguided postidentification remarks or actions will not render it invalid or preclude a subsequent in-court identification.").

Even if the circumstances of Officer Calabrese's identification were somehow suggestive, his identification was otherwise reliable. During his time as an FIO in Flatbush, Officer Calabrese had investigated, or otherwise interacted, with each of the three defendants numerous times. That far exceeds what courts have found to be sufficient for independent reliability in other cases. See Diaz, 986 F.3d at 207-08 (identification was independently reliable where victim had seen attacker once, during an attack that lasted "over a minute"); Woodford, 2019 WL 5457854, at *13 (identification was independently reliable where officer had previously recognized the defendant during a traffic stop); United States v. Wolfish, 525 F.2d 457, 462 (2d Cir. 1975) (identification was independently reliable where witness had had three 10-minute meetings with the defendant).

Officer Calabrese's testimony should therefore be admitted pursuant to Rule 801(d)(1)(C).

Officer Calabrese's testimony is also proper lay opinion testimony admissible pursuant to Rule 701(a). Officer's Calabrese's experience with these defendants has caused him to become familiar with these defendants to a much greater degree than the jury's observations would allow. As such, his identifying these defendants in the relevant video at trial would be helpful testimony for the jury to consider in their deliberations. Woodford, 2019 WL 5457854, at *14 (finding that the officer-witnesses "clearly possessed greater

8

familiarity" with the defendant where their job was to "investigate gang activity, including identifying and tracking suspected gang members" and noting that "[t]he jury's observation of [the defendant] pales in comparison to the officers' familiarity with him leading up to the shooting"). The probative value of such testimony is substantial, and is not outweighed or substantially outweighed by the risk of unfair prejudice. Id.

## CONCLUSION

For the reasons set forth above, the government's motions in limine should be granted.

Dated:    Brooklyn, New York
         September 21, 2022

                                          Respectfully submitted,

                                          BREON PEACE
                                          United States Attorney
                                          Eastern District of New York
                                          271 Cadman Plaza East
                                          Brooklyn, New York 11201

                              By:      /s/
                                            Jonathan Siegel
                                          Dana Rehnquist
                                          Sophia M. Suarez
                                          Assistant United States Attorneys
                                          (718) 254-7000

cc:    Clerk of the Court (WFK) (by ECF)
        Defense Counsel (by ECF)