```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
                                                           :
                                                           :         ORDER
          v.                                               :         20-CR-293 (WFK)
                                                           :
DAVON BROWN, et al.,                                       :
                                                           :
                    Defendants.                            :
-----------------------------------------------------------X
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
                                                           :
                                                           :         ORDER
          v.                                               :         21-CR-166 (WFK)
                                                           :
OLUWAGBENGA AGORO,                                         :
                                                           :
                    Defendant.                             :
-----------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

Trial in this case will commence on October 17, 2022. Before the Court is the Government's motion to empanel an anonymous jury. For the following reasons the Court GRANTS the motion for an anonymous jury.

## BACKGROUND

There are five Defendants in this case who have yet to reach a resolution: Oluwagbenga Agoro, Lorenzo Bailey, Quincy Battice, Jean Fremont, and Ricardo Hepburn (collectively, "Defendants").

Defendants are alleged members and associates of the Folk Nation Gangster Disciples ("GD"), which operates in Brooklyn through several neighborhood-based subgroups, or "sets," including the No Love City set ("NLC"). Gov't Mem. at 2. According to the Government, members and associates of GD employ illicit means to earn money, including trafficking in counterfeit currency, drug trafficking and fraud. Gov't Detention Letter ("Det. Letter") at 2,

1

ECF No. 65. GD allegedly engages in violence on behalf of the gang, both in retaliation for actions against the gang and to enhance the reputation of the members of the gang. *Id.*

The Government claims Defendants Bailey and Fremont are leaders of NLC. *Id.* Specifically, Fremont is an alleged member of the set's five-person "Steering Committee," a group of the top leaders of the set, and Bailey is the set's "Chief of Security," responsible both for policing violations of the gang's internal rules and for retaliating against rival gang members. *Id.*

For purposes of this memorandum and order, the Court focuses its recitation of the facts only as they pertain to the remaining Defendants facing trial.

I. **The November 7, 2020 Shootings**

The Government alleges that on November 7, 2020, Defendants Agoro, Bailey, and Battice, along with two co-Defendants, engaged in two drive-by shootings in Canarsie, Brooklyn. *Id.* at 10. Three separate cars were involved in the shootings—an Audi, a Jeep, and a Mercedes—in keeping with what the Government says is GD's practice in other drive-by shootings. *Id.* In this practice, each car and its occupants plays a role in the shootings: one car—in this case, the Jeep—carries the shooters and the guns, while the other two cars—here, the Audi and Mercedes—serve as decoy cars. *Id.* According to the Government, the decoy cars carried unarmed passengers and were intended to slow down the police or draw their attention away from the shooter car. *Id.*

On the day of the alleged shooting, the three cars drove from Flatbush, Brooklyn to rival gang territory in Canarsie, Brooklyn. *Id.* At least two occupants of the Jeep then opened fire into a crowd of people, shooting at least eight times before speeding back to Flatbush. *Id.* No one was injured in this shooting. *Id.* After a short break, the three cars drove back to Canarsie,

2

where at least three occupants of the Jeep fired at least eleven shots into a second crowd of people, non-fatally wounding two bystanders. *Id.* at 10-11. The three cars then fled the scene and returned to Flatbush. *Id.* at 11.

## II.   The November 9, 2020 Shootings

The Government alleges that on the following day, November 8, 2020, Defendant Destine instructed Defendant Agoro to recruit two other individuals for a shooting. *Id.* at 14. Defendant Agoro allegedly expressed interest in committing the shooting but stated he wanted to be in the shooter car, not the decoy car. *Id.*

On November 9, 2022, Defendants Agoro and Hepburn, with two other co-Defendants, allegedly drove in a three-car convoy to rival gang territory in Prospect Park South, Brooklyn. *Id.* at 15. The Government claims Defendant Hepburn drove the shooter car—a stolen BMW— with Defendant Agoro and a co-Defendant as passengers. *Id.* at 14. One of the decoy cars—a white Acura—was a rental car equipped with a GPS tacker rented by a co-Defendant. *Id.*

After twice circling a group of men, the cars stopped. *Id.* at 15. Defendant Agoro and a co-Defendant allegedly exited the shooter car and opened fire across the street, firing several shots before fleeing to Flatbush. *Id.*

Later on November 9, 2020, Defendants Agoro, Fremont, and Hepburn, along with two co-Defendants, allegedly participated in another drive-by shooting. *Id.* The Defendants drove in a two-car convoy, with the BMW again serving as the shooter car and the Acura acting as the decoy car. The Government alleges Defendant Hepburn drove the BMW with Defendant Agoro, a co-Defendant, and another individual as passengers, while a co-Defendant drove the Acura with Defendant Fremont as a passenger. *Id.*

3

The two cars drove to Brownsville, Brooklyn, where one or more occupants of the BMW began shooting into a crowd, striking one woman in the shoulder and grazing her back. *Id.* at 16. The two cars then fled to Flatbush. *Id.*

## PROCEDURAL HISTORY

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment alleging Defendants are members and associates of GD. The charged conduct covers several separate shootings that left at least six victims non-fatally injured.

The Superseding Indictment charges Defendants with multiple counts of Assault in Aid-of-Racketeering; Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence; being a Felon in Possession of a Firearm; Attempted Murder in Aid-of-Racketeering; Attempted Assault in Aid-of-Racketeering; and Conspiracy to Murder Rival Gang Members.

On September 9, 2022, the Government moved to empanel an anonymous jury, seeking to withhold the names, precise addresses, and workplaces of members of the venire and petit jury. Gov't Mot. at 50, ECF No. 318. The Government contends an anonymous jury is appropriate because Defendants are members of an ongoing criminal enterprise that has members who are currently at large and because the upcoming trial is likely to attract significant media attention. Moreover, Defendant's would not be prejudiced by the use of an anonymous jury because the proposed method for preserving anonymity does not substantially interfere with the ability to conduct robust *voir dire*, and the Court can protect Defendants' presumption of innocence by providing jurors with a neutral explanation for the anonymity.

Defendants Battice and Bailey opposed the motion and were joined by Defendants Fremont and Hepburn. Battice Mot., ECF No. 342; Bailey Mot., ECF No. 355. Defendant Battice argues an anonymous jury would unfairly burden Defendants' presumption of innocence,

4

sending the signal to potential jurors that Defendants are dangerous. According to Defendant Battice, an anonymous jury is unnecessary in this case because there are no allegations of witness tampering, jury tampering, or obstruction of justice and because the case has garnered little media attention to date. Defendant Bailey adds that an anonymous jury would limit defense counsel's ability to evaluate a potential juror's fitness to serve and erode the presumption of innocence. Bailey Mot. at 1. He argues the motion for an anonymous jury is premature because Defendants are in custody and the Government has not provided any proof that Defendants intend to tamper with a jury. However, if the Court decides to empanel an anonymous jury, Defendant Battice requests "an unconditional number of peremptory challenges" given the risks of prejudice.

On September 28, 2022, the Court held a hearing on the motion. At the hearing, counsel for Defendant Battice did not object to withholding the precise home addresses of potential jurors as long as defense counsel had access to the neighborhood of residence.

## APPLICABLE LAW

Empaneling an anonymous jury presents "the possibility of unfair prejudice to the defendant and the danger of encroaching on the presumption of innocence." *United States v. Tutino*, 883 F.2d 1125, 1132 (2d Cir. 1989). Accordingly, "courts must balance 'the defendant's interest in conducting meaningful *voir dire* and in maintaining the presumption of innocence, against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." *United States v. Taylor*, 17 F. Supp. 3d 162, 183 (E.D.N.Y. 2014) (Irizarry, J.), *aff'd*, 802 F. App'x 604 (2d Cir. 2020) (quoting *United States v. Quinones,* 511 F.3d 289, 295 (2d Cir. 2007)). Although an anonymous jury may implicate a defendant's constitutional rights, "when genuinely called for and when properly used,

5

anonymous juries do not infringe a defendant's constitutional rights." *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012) (quoting *United States v. Quinones,* 511 F.3d 289, 295 (2d Cir.2007)). A court may empanel an anonymous jury "upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013) (citing *Pica*, 692 F.3d at 88). "Within these parameters, the decision whether or not to empanel an anonymous jury is left to the district court's discretion." *United States v. Gotti,* 459 F.3d 296, 345 (2d Cir.2006); *see also United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991).

With respect to the first element—whether "there is strong reason to believe the jury needs protection"—courts in this circuit consider, among other things:

> (1) the dangerousness of the defendant, demonstrated by the seriousness of the charged crimes, including whether the defendant is charged with participating in a large-scale criminal enterprise, and the defendant's criminal history; (2) whether the defendant or his associates have engaged in past attempts to interfere with the judicial process . . .; (3) whether the defendant has access to means to harm the jury; and (4) whether the trial is likely to attract media attention, as may be illustrated by the nature and degree of pretrial publicity.

*United States v. Wilson*, 493 F. Supp. 2d 397, 398 (E.D.N.Y. 2006) (Garaufis, J.) (citing *United States v. Paccione,* 949 F.2d 1183, 1192 (2d Cir. 1991); *United States v. Tutino,* 883 F.2d 1125, 1132–33 (2d Cir. 1989); *United States v. Thomas,* 757 F.2d 1359, 1364–65 (2d Cir. 1985); *United States v. Melendez,* 743 F.Supp. 134, 137 (E.D.N.Y. 1990) (Spatt, J.); *United States v. Coonan,* 664 F.Supp. 861, 862 (S.D.N.Y. 1987) (Knapp, J.); *United States v. Vario*, 943 F.2d

236, 240 (2d Cir. 1991); and *United States v. Persico,* 832 F.2d 705, 717 (2d Cir. 1987). While "it is unclear whether any of these factors individually justif[ies] [e]mpaneling an anonymous jury," "there are numerous cases indicating that anonymity is appropriate when some combination of these factors is present." *United States v. Ashburn,* No. 13-CR-0303 NGG, 2014 WL 5800280, at *3 (E.D.N.Y. Nov. 7, 2014) (Garaufis, J.) (citing *United States v. Khan,* 591 F. Supp. 2d 166, 169 (E.D.N.Y. 2008) (Irizarry, J.)).

With respect to the second element—"taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected"—it is important "that a balance be struck between the government's interest in the integrity of the judicial process and the defendant's interest in preserving and safeguarding the presumption of innocence." *United States v. Bellomo,* 263 F. Supp. 2d 557, 559 (E.D.N.Y. 2003) (Glasser, J.). A fair balance requires "reasonable precautions" to "be taken to minimize any potential prejudice, particularly with respect to Defendant's right to a meaningful *voir dire* and Defendant's right to maintain a presumption of innocence." *Wilson,* 493 F. Supp. 2d at 401 (citing *United States v. Amuso,* 21 F.3d 1251, 1264 (2d Cir. 1994)). To minimize the prejudicial effects of an anonymous jury, courts give jurors "a plausible and nonprejudicial reason for not disclosing their identities" and "conduct[] a *voir dire* designed to uncover bias." *United States v. Napout,* 963 F.3d 163, 188–89 (2d Cir. 2020) (internal quotations omitted) (citing *United States v. Kadir,* 718 F.3d 115, 120 (2d Cir. 2013)).

## APPLICATION

An anonymous jury—one where the names, precise addresses, and workplaces of the members of the venire and petit jury are not revealed—is appropriate in the present case because

there is strong reason to believe the jury needs protection and the Court will take reasonable precautions to minimize any potential prejudice to Defendants.

I. Need for Protection

a. Dangerousness

First, there is strong reason to believe the jurors are in need of protection based on the seriousness of the crimes charged, the scale of the alleged criminal enterprise, the positions within that enterprise allegedly occupied by Defendants, and the criminal histories of some of the Defendants. As an initial matter, "[t]he invocation of the words 'organized crime' . . . unless there is something more, does not warrant an anonymous jury." *Vario*, 943 F.2d at 241. "This 'something more' can be a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a juror to reasonably fear for his own safety." *Id.* In the instant case, "something more" than Defendants' alleged connections to organized crime is in fact present.

The Superseding Indictment charges Defendants with extremely serious and violent crimes, including Conspiracy to Murder Rival Gang Members in violation of 18 U.S.C. §1959(a)(5), Attempted Murder In-Aid-Of Racketeering in violation of 18 U.S.C. §1959(a)(5), Assault In-Aid-Of Racketeering in violation of 18 U.S.C. §1959(a)(3), Attempted Assault In-Aid-Of Racketeering in violation of 18 U.S.C. §1959(a)(6), and Possessing, Brandishing and Discharging a Firearm During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii). The Government indicates the trial evidence that will be introduced to prove the elements of these charges "will depict a pattern of violence by the defendants and fellow members of GD." Gov't Mot. at 52. The charges also stem from multiple shootings in which Defendants

allegedly fired guns into crowded areas throughout Brooklyn, with innocent bystanders present and usually in broad daylight. This alleged lack of concern for the lives of innocent people weighs in favor of a finding that Defendants pose a risk to jurors who will decide whether they are to be subjected to potentially lengthy prison terms.

The scale and activities of the alleged GD enterprise also weigh in favor of an anonymous jury. The Superseding Indictment alleges GD is a gang operating throughout Brookyln, New York. Superseding Indictment ¶ 1. Members and associates of GD have allegedly "committed acts of violence, including acts involving murder and assault, as well as other crimes, including robbery, extortion, trafficking in counterfeit currency, drug trafficking, fraud and obstruction of justice." *Id.* ¶ 3. According to the Government, the purposes of the enterprise include "[p]reserving and protecting the power, territory and criminal ventures of the enterprise through the use of intimidation, threats of violence and acts of violence, including murder and assault," "[k]eeping victims and rivals in fear of the enterprise and its members and associates," and "[c]oncealing the activities of the enterprise from law enforcement." *Id.* ¶ 6.

These allegations are especially concerning for juror safety because Defendants are alleged leaders of the NLC. Courts have found that "leadership of a criminal organization indicates Defendant's propensity for violence." *Khan*, 591 F. Supp. 2d at 170–71. Here, Defendant Fremont is alleged to be a member of the set's five-person "Steering Committee," which includes the set's top leaders, while Defendant Bailey is allegedly the set's "Chief of Security," responsible both for policing violations of the gang's internal rules and for retaliating against rival gang members. Gov't Ltr. at 2, ECF No. 65.

Each of the Defendants facing trial also has a criminal history that further warrants concern for juror safety. Defendant Agoro was charged with the instant offense while on

9

supervision for a separate violent criminal incident. *Id.* at 16. Specifically, in February 2020, Defendant Agoro was arrested in connection with an argument over a parking space, during which he "threaten[ed] a woman with a black firearm, spitting at her, and then hitting her in the mouth, knocking her to the ground," fleeing the scene, and resisting arrest. *Id.* In March 2021, Defendant Agoro was charged with threatening physical violence in furtherance of a plan to commit extortion and brandishing a firearm in furtherance of a crime of violence, stemming from an alleged armed extortion of a bodega employee. *See* 21-CR-166 (WFK).

Defendant Bailey was arrested in July 2019 for a July 2017 armed robbery, for which he faces state weapons and robbery charges. Gov't Ltr. at 17. He also faces charges in connection with an August 2018 arrest for criminal possession of a weapon after he allegedly fled from officers attempting to apprehend him pursuant to a bench warrant. *Id.* Defendant Bailey has a 2015 felony conviction for bail jumping in the second degree, a 2015 felony conviction for possession of a forged instrument in the second degree, a 2011 felony conviction for identity theft, and a 2009 youthful offender adjudication for criminal possession of stolen property in the fourth degree. *Id.*

Defendant Battice was on supervised release at the time of the charged conduct in this case following a March 2018 conviction for conspiracy to manufacture and utter counterfeit obligations of the United States. *Id.* at 18. He, in turn, committed that offense while serving a term of parole stemming from a 2008 robbery conviction in Kings County, New York. *Id.* Defendant Battice has also been convicted of attempted grand larceny and felony elusion in June 2015 and possessing an access device, knowing it was counterfeit, altered, incomplete or belonged to another person and knowingly furnishing law enforcement with false identification information in June 2016. *Id.*

10

Defendant Fremont has been convicted of (1) a 2017 felony conviction for conspiracy in the fourth degree; (2) a 2017 felony conviction for attempted criminal possession of a weapon in the second degree for a loaded firearm; (3) a 2017 misdemeanor conviction for criminal possession of a weapon in the fourth degree; and (4) a 2013 felony youthful offender adjudication for criminal possession of a weapon for a loaded firearm. *Id.* at 20.

Finally, Defendant Hepburn was adjudicated a youthful offender in 2018 for robbery in the first degree and has numerous open charges, including for grand larceny in the second degree and burglary in the third degree, robbery in the second degree and grand larceny in the fourth degree, and burglary in the first degree. *Id.* at 21.

The combined criminal histories of the Defendants is extensive and weighs in favor of a finding that juror safety is at risk. Moreover, courts not only consider whether Defendants have attempted to intimidate jurors but also whether they have committed "attempts to evade prosecution," which Defendants have allegedly attempted on multiple occasions. *Melendez*, 743 F. Supp. at 137.

### b. Attempts to Interfere with Judicial Process

Defendants contend an anonymous jury is inappropriate in this case in part because the Defendants were not charged with witness or jury tampering or obstruction of justice. *See* Battice Mot. at 1. Courts must consider all attempts to interfere with the judicial process when considering whether to empanel and anonymous jury. *See Wilson*, 493 F. Supp. 2d at 398. However, "the Government need not charge a defendant with obstruction of justice in the indictment in order for this factor to militate in favor of protecting the jury." *Ashburn*, 2014 WL 5800280, at *7 (citing *United States v. Mayes*, No. 12-CR-385 ARR, 2013 WL 6175824, at *3 (E.D.N.Y. Nov. 25, 2013) (Ross, J.) ("[T]he defendants are not charged in the indictment with

11

witness tampering, jury tampering, or obstruction of justice . . . . Still, the court can rely on the government's proffer of facts to determine whether the jury needs protection.") (internal citations and footnote omitted)); *see also United States v. Lemos*, No. 10-CR-954 NGG, 2012 WL 6151733, at *2 (E.D.N.Y. Dec. 11, 2012) ("Although the Indictment does not charge crimes that necessarily involve obstruction of justice, much of the evidence that the Government intends to present will involve acts of violence aimed at protecting and expanding the enterprise and keeping victims and rivals in fear of the enterprise and its members.").

In the present case, there is some evidence to suggest Defendants have interfered in judicial proceedings. For example, according to the Government, on August 19, 2022, Defendant Bailey refused to submit to a buccal swab despite a court-issued search warrant ordering its collection. Gov't Reply at 2. This disregard for the judicial process undermines the suggestion Defendants have no intent to interfere in the proceedings. On the other hand, the Government has not alleged Defendants have engaged in witness or jury tampering. In any event, courts "may appropriately consider a defendant's propensity to threaten witnesses or otherwise to tamper with the judicial process in evaluating the need for an anonymous jury," not merely whether they have engaged in attempts to interfere in the process. *United States v. Quinones*, 511 F.3d 289, 296 (2d Cir. 2007). Among the factors to consider in determining a Defendant's propensity to tamper with the judicial process is "the severity of the defendant's anticipated criminal punishment." *Ashburn*, 2014 WL 5800280, at *10. In this case, Defendants face substantial prison sentences if convicted of the crimes with which they are charged, providing a motive to interfere with the judicial process. Accordingly, this factor also weighs slightly in favor of an anonymous jury.

### c. Means to Harm the Jury

The next factor to consider is whether Defendants have the ability to harm the jury. "When a defendant is under pretrial detention, whether he has means to harm the jury often hinges on the extent of his connections outside of prison." *United States v. Herron*, 2 F. Supp. 3d 391, 396 (E.D.N.Y. 2014) (Garaufis, J.), *aff'd*, 762 F. App'x 25 (2d Cir. 2019). In the present case, the alleged enterprise and Defendants' positions in that enterprise suggest Defendants have "access to means to harm the jury." *Wilson*, 493 F. Supp. 2d at 398 (citing *Melendez*, 743 F. Supp. at 138 ("[D]ue to the alleged large-scale operation of the organization, including the amount of participants and territory covered and the amount of the money allegedly involved, the defendants could have access to means to harm and/or threaten jurors.")). Indeed, "a defendant with former leadership status in a criminal organization"—like multiple Defendants allegedly have in this case—"has the standing and potential ability to influence and exercise control over its members to a more significant extent," such that "some followers may feel compelled to act on his behalf, even without any direction from him." *Ashburn*, 2014 WL 5800280, at *11 (internal quotation marks and citations omitted). The Court finds Defendants have the means to harm jurors, which weighs in favor of an anonymous jury.

### d. Publicity

In determining whether the trial is likely to attract media attention and publicity, courts consider both the amount and nature of the publicity. *See Ashburn*, 2014 WL 5800280, at *12. Given the nature of the present case, there is potential for media coverage of the trial. The Government has cited the significant pre-trial publicity of the YouTube video, viewed more than 40,000 times. *See* Govt' Reply at 2. Although the Court is sensitive to the concern that an anonymous individual could disseminate juror information over YouTube, this level of media

13

coverage is not on par with what courts have determined warrants an anonymous jury. *See, e.g., United States v. Paccione*, 949 F.2d 1183, 1193 (2d Cir. 1991); *United States v. Persico*, 832 F.2d 705, 717 (2d Cir. 1987). In any event, the Court will enquire of each potential juror whether the juror has any knowledge of the case. Accordingly, this factor weighs against a finding that the jury needs protection.

Weighing each of these factors, the Court finds jurors need protection.

## II.  Precautions to Minimize Prejudicial Effect

Having concluded an anonymous jury is warranted, the Court must consider what precautions to take to limit any potential prejudice Defendants may face without the names, precise addresses, and workplaces of the jurors. *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) ("If an anonymous jury is warranted, a defendant's fundamental rights must be protected by the court's conduct of a *voir dire* designed to uncover bias as to issues in the cases and as to the defendant, and by taking care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities or for taking other security measures.") (internal quotations and alterations omitted)).

First, the Court will conduct a robust *voir dire*. The questioning of potential jurors during *voir dire* is "quintessentially a matter for the discretion of trial courts." *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002). And while the Court is "required to permit at least some questioning with respect to any material issue that may actually or potentially arise during the trial," "it need not include specific points requested by a particular defendant." *United States v. Tutino*, 883 F.2d 1125, 1133 (2d Cir. 1989). In conducting *voir dire*, the Court will pose sufficiently thorough and detailed questions to potential jurors to elicit the information necessary for the parties to make meaningful decisions in jury selection. Moreover, the Government's

14

proposed method for achieving anonymity will not affect access to such information, and the Court will fashion questions to elicit all necessary information to determine potential juror bias. For example, without asking for precise home addresses or employer names, the Court may ask jurors the names of the neighborhoods in which they live and the fields in which they work or from which they have retired. The Defendants have not objected to the use of neighborhoods as a substitute for precise addresses.

Second, the Court will use the jury questionnaire to conserve judicial resource and facilitate the jury selection process. "Whether to use a jury questionnaire is within the discretion of the Court." *United States v. Tomero*, 486 F. Supp. 2d 320, 324 (S.D.N.Y. 2007) (Kaplan, J.). This questionnaire will be drafted with input from the parties and will assist the court in screening for juror bias. After review of the completed questionnaires, the Court will then summon the remaining potential jurors for additional in-person questioning by the Court on the record and in the presence of all counsel of record.

Third, the Court will provide potential jurors with a neutral explanation for the steps taken to preserve their anonymity. "[T]he Second Circuit has repeatedly held that a defendant's presumption of innocence is properly maintained where the court gives a neutral and non-prejudicial explanation to the jury regarding the need for anonymity." *United States v. Prado*, No. 10-CR-74 JFB, 2011 WL 3472509, at *9 (E.D.N.Y. Aug. 5, 2011) (Bianco, J.). Here, the Court will instruct jurors that the purpose of their anonymity is to preserve and respect their personal privacy and to minimize any interference in their personal affairs by the media and the public. These reasons are well-established as "plausible, appropriate, and nonprejudicial." *Ashburn*, 2014 WL 5800280, at *18 (citing cases).

## CONCLUSION

For the foregoing reasons, the Court will empanel an anonymous jury in the trial of this case scheduled to commence on Monday, October 17, 2022. The parties are directed to file proposed questions to be included in a jury questionnaire by Thursday, October 6, 2022. The Court will then finalize the questionnaire to be distributed to potential jurors, which will exclude names, precise addresses, and workplaces. Potential jurors will be identified by numbers. The Court will issue summonses to procure the appearance of 250 potential jurors at the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, on Tuesday, October 11, 2022, at which time, they will fill out the questionnaires. The parties will then have until Thursday, October 13, 2022 at 5:00 P.M. to submit proposed lists of the potential jurors to return to the Court on October 17, 2022 for additional, in-person *voir dire*.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2022
      Brooklyn, New York

16